455 So.2d 404 (1984)
MERCEDES-BENZ OF NORTH AMERICA, INC., a Delaware Corporation, Appellant,
v.
The DEPARTMENT OF MOTOR VEHICLES OF the STATE of Florida, for the Use and Benefit of FIFTH AVENUE MOTORS, LTD., a Florida Corporation, D/B/a International Motor Cars, Ltd., and Dwayne Hawkins, an Individual; Fifth Avenue Motors, Ltd., a Florida Corporation, D/B/a International Motor Cars, Ltd.; Dwayne Hawkins, an Individual, Appellees.
No. 83-895.
District Court of Appeal of Florida, Second District.
July 11, 1984.
Rehearing Denied September 7, 1984.
*405 W.O. Birchfield and Dennis E. Hayes of Martin, Ade, Birchfield & Johnson, Jacksonville, for appellant.
J. Robert McClure, Jr. of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellee Fifth Ave. Motors, Ltd.
Joseph W. Letzer of Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for appellee Dwayne Hawkins.
RYDER, Chief Judge.
This appeal involves the application of the New Jersey "Franchise Practices Act," sections 56:10-1  56:10-10, New Jersey *406 Statutes (1971),[1] to a case involving an attempt by the original automobile franchisee to transfer the franchise to a third party. In this appeal, Mercedes-Benz of North America, Inc. (MBNA), a New Jersey franchisor and the defendant below in an action to compel a franchise transfer and to recover damages, seeks review of several rulings relating to the trial court's determination that MBNA granted approval to the transfer of its franchise to the third party as a matter of law. MBNA also challenges the permanent injunction compelling MBNA to immediately enter into a binding Mercedes-Benz standard car dealer agreement with the third party.
On September 24, 1976, appellee Fifth Avenue Motors, Ltd., d/b/a International Motor Cars, Ltd., a Florida corporation (Fifth Avenue), entered into a Mercedes-Benz standard dealer agreement with MBNA for a St. Petersburg franchise. Subsequently, on November 1, 1978, Fifth Avenue entered into an "Assets Purchase Agreement" (Agreement) with appellee Dwayne Hawkins (Hawkins), the third party. In this Agreement, Fifth Avenue agreed to sell and Hawkins agreed to buy the fixed assets located at Fifth Avenue's place of business which included, but was not limited to, "all furniture, fixtures, and machinery, and shop equipment." The Agreement conditioned Hawkins' obligations upon his being able to enter into a dealer agreement with MBNA and another car franchisor. It was also necessary that Hawkins procure a lease on the premises currently occupied by Fifth Avenue. The conditions had to be met on or before the closing date which was to be within ten days after Hawkins had entered into the required dealer agreements.
Also on November 1, an officer of Fifth Avenue notified MBNA by telephone of its desire to transfer the franchise to Hawkins. A letter to this effect was mailed to MBNA on this date. The letter stated that Fifth Avenue had entered into the buy-sell agreement with Hawkins, who was "an extremely qualified successor" and "[a] man of impeccable integrity and an astute, respected businessman." On November 2, MBNA sent Fifth Avenue a telegram which stated: "By your actions the Mercedes-Benz dealer agreement between us has been terminated. Letter follow. We will entertain no further proposals to sell the Mercedes-Benz franchise."[2] Thereafter, Fifth Avenue sent telegrams to MBNA and contacted one of their representatives in order to request a personal meeting to discuss the situation. The MBNA representative told one of Fifth Avenue's representatives that the telegram was self-explanatory, there would be no purpose in a personal visit, and he could not further discuss the matter.
On November 27, 1978, MBNA received, through Fifth Avenue, a letter from Hawkins also requesting a meeting to discuss the proposed transfer and a packet of information. This packet included a copy of the buy-sell agreement, the resignation of Fifth Avenue contingent upon the appointment of Hawkins as the new dealer, the short term lease in Hawkins' favor on the present facilities, a letter of recommendation of Hawkins from a bank vice president, a resume of a proposed manager, a personal financial statement of the manager, a personal financial statement of Hawkins, and a financial statement of Hawkins' current dealership franchises.
After little activity during the remainder of 1978, an MBNA vice-president wrote Fifth Avenue on January 5, 1979 and indicated that its failure to comply with the terms of the dealer agreement caused MBNA to send the notice of termination in *407 accordance with the provisions of Florida law. Shortly thereafter, Hawkins wrote to an MBNA regional officer requesting a personal meeting with the president of MBNA. Fifth Avenue then wrote MBNA restating their desire to transfer the franchise to Hawkins and noting that the refusal to discuss the authorization constituted bad faith. On January 18, the vice-president of MBNA responded to Fifth Avenue's letter and indicated that Fifth Avenue was not entitled to designate a transferee under either Florida law or the standard dealer agreement. The letter added that MBNA had not refused to consider Hawkins as a possible transferee and that Hawkins could submit an application to the regional office for consideration. The letter further indicated that Hawkins' application should contain much more detail than was shown in the proposal submitted earlier because it did not detail capital, ownership, management, staffing or operation plans that had been formulated.
On February 9, 1979, Hawkins responded to the last MBNA letter and indicated his willingness to detail the necessary information if MBNA would let him know exactly what was needed. A personal meeting was again requested. Hawkins apparently never received a response.
Eventually, on July 1, 1980, after MBNA had revised its standard dealer agreement (which included a provision that MBNA would not unreasonably withhold consent to a franchise sale or transfer), Fifth Avenue resubmitted its request to transfer the franchise to Hawkins. On July 21, MBNA's corporate attorney sent a letter to Fifth Avenue indicating the request for transfer of the dealer agreement was of no effect because the agreement had been terminated by MBNA. The letter concluded that although MBNA was required by operation of law to continue to do business with Fifth Avenue it was not required to approve the attempt to transfer the dealer agreement. Prior to this time, on July 8, 1980, Fifth Avenue and Hawkins, suing in their own names and on behalf of the State Department of Motor Vehicles, filed a complaint against MBNA to compel a transfer of the franchise and recover damages. Subsequently, the trial court granted a motion to dismiss finding that Florida law and not New Jersey law controlled the resolution of the issues raised by the complaint. On appeal, however, this court reversed that ruling holding that New Jersey law should be applied pursuant to the "choice of law" provision in the franchise agreement between MBNA and Fifth Avenue. See Department of Motor Vehicles v. Mercedes-Benz of North America, Inc., 408 So.2d 627 (Fla. 2d DCA 1981). We remanded the case for reinstatement of all counts except the count asserting relief pursuant to section 320.643, Florida Statutes (Supp. 1980). Id. at 630.
On remand, Fifth Avenue and Hawkins[3] filed a new complaint which was amended three times. In Count I of the third amended complaint, Fifth Avenue and Hawkins sought to compel a franchise transfer pursuant to section 56:10-6, New Jersey Statutes (1971). In Count II, Fifth Avenue and Hawkins sought to compel transfer of the franchise on the basis of the 1980 change in the Mercedes-Benz standard dealer agreement. In Count III, Fifth Avenue and Hawkins sought to compel a transfer because MBNA's refusal to approve Hawkins as a transferee violated implied common law duties of good faith and commercial reasonableness. Hawkins sought to recover both lost profits and punitive damages in each of the first three counts. *408 Finally, in Count IV, Fifth Avenue and Hawkins sought declaratory relief so that the rights and obligations of the parties involved could be established.
MBNA filed its answer and numerous affirmative defenses. As one of its denials, MBNA alleged it owed no duty of good faith or commercial reasonableness to either Fifth Avenue or Hawkins, and, furthermore, did not violate any duty which might have been owed to these parties. MBNA stated Fifth Avenue's failure to give proper statutory notice of the proposed sale as required by New Jersey law (§ 56:10-6) was a defense to the action to compel. MBNA also asserted that section 56:10-9, New Jersey Statutes (1971), was a defense to the action to compel transfer because Fifth Avenue was in substantial noncompliance with the requirements imposed by the existing franchise agreement at the time it gave notice of its intention to transfer the franchise. MBNA stated as another defense that it had timely and properly rejected Hawkins under New Jersey law as the proposed transferee because he was unqualified to run a Mercedes-Benz franchise. In its final affirmative defense, MBNA asserted the 1980 amendment to the Mercedes-Benz standard dealer agreement could not be a basis of a cause of action (Count II) because it did not become effective until after Fifth Avenue and Hawkins filed the first pleading against MBNA on January 30, 1979, and, furthermore, because MBNA never entered into the 1980 franchise agreement with either party.
After several motions were filed, the trial court agreed to bifurcate the issues concerning injunctive relief from the issues of damages.[4] Shortly thereafter, the trial court entered an order striking several of MBNA's affirmative defenses including its affirmative defense asserting section 56:10-9 as a bar to the action to compel transfer of the franchise. The court ruled Fifth Avenue's substantial noncompliance with the terms of the franchise agreement was not a bar to any action brought by the franchise or proposed transferee. In doing so, the court explained: "The court agrees that the language of N.J.Stat. § 56:10-6 is clear, unequivocal, and self-executing  if the franchisor does not reply within the specified 60 days his approval is deemed granted. This language does not limit its efficacy where the franchisee is in noncompliance with its agreement with the manufacturer."
The trial court also ruled MBNA would be precluded from discovering and introducing any evidence at trial concerning this affirmative defense. The court also struck MBNA's final defense relating to the impact of the 1980 amendment, reasoning that under section 320.641(3), Florida Statutes (1971), all beneficial changes accrue to the benefit of the continuing dealer, Fifth Avenue.
After a two-day nonjury trial on the issues relating to injunctive relief, the trial court entered an order which made numerous findings of fact and conclusions of law. With respect to Count I, the trial court ruled Fifth Avenue had complied with the notice provisions of section 56:10-6 and all conditions of the "Asset Purchase Agreement" were either met or waived by Fifth Avenue and Hawkins, and MBNA was estopped because of its actions in not asserting the failure of the conditions. The trial court further ruled that MBNA received proper notification within the meaning of section 56:10-6 no later than November 27, 1978, and that Hawkins agreed in writing to comply with the requirements of the franchise agreement also on that date. The trial court also ruled that MBNA did not advise Fifth Avenue in accordance with section 56:10-6 within 60 days of receipt of the unacceptability of Hawkins as the transferee. The court added that MBNA's attempted termination on November 2, 1978, was ineffective because MBNA failed to comply with the provisions for termination under section 56:10-5. The court concluded that MBNA's approval of Hawkins as the transferee was deemed granted as a matter of law because of MBNA's failure *409 to properly reject Hawkins in accordance with section 56:10-6.
With respect to Count II, the trial court ruled the addition of the "unreasonably withholding consent" language of the 1980 revised Mercedes-Benz standard dealer agreement inured to the benefit of both Fifth Avenue and Hawkins under section 320.641(3), Florida Statutes.
With respect to Count III, the trial court ruled: (1) under the common law relating to an assignment of an interest MBNA was under a duty not to unreasonably or in bad faith refuse to consider Hawkins and his qualifications with respect to denying or accepting him as a transferee, but (2) MBNA acted commercially unreasonably and in bad faith by refusing to consider Hawkins because (a) MBNA believed it had no duty to consider Hawkins and wished to punish Fifth Avenue by not accepting their candidate and/or (b) MBNA desired to give the franchise to some other favored candidate.
Shortly after entering the above order containing the findings of fact and conclusions of law, the trial court entered an order directing MBNA to enter into a standard dealership agreement with Hawkins and transport to him, temporarily, twenty cars per month. After motions for rehearings were filed and denied, MBNA filed this appeal and sought and received a stay of the latter order upon posting a sufficient bond.
The issues which merit our attention are as follows: (1) whether the trial court erred in striking MBNA's defense that section 56:10-9 can be asserted as a defense to an action brought to compel a transfer of a franchise; (2) whether the trial court erred in ruling that MBNA breached a common law duty of commercial reasonability and good faith with respect to its decision not to affirmatively approve Hawkins as the new franchisee; (3) and whether the trial court erred in striking MBNA's affirmative defense that the 1980 Mercedes-Benz revised standard dealer agreement was of no benefit to Fifth Avenue and Hawkins.[5]
The provisions of the New Jersey "Franchise Practices Act" which are relevant to the issues before us are:
Section 56:10-5. Termination of franchise; notice; grounds.
It shall be a violation of this act for any franchisor directly or indirectly through any officer, agent, or employee to terminate, cancel, or fail to renew a franchise without having first given written notice setting forth all the reasons for such termination, cancellation, or intent not to renew to the franchisee at least 60 days in advance of such termination, cancellation, or failure to renew, except (1) where the alleged grounds are voluntary abandonment by the franchisee of the franchise relationship in which event the aforementioned written notice may be given 15 days in advance of such termination, cancellation, or failure to renew; (2) where the alleged grounds are the conviction of the franchisee in a court of competent jurisdiction of an indictable offense directly related to the business conducted pursuant to the franchise in which event the aforementioned termination, cancellation or failure to renew may be effective immediately upon the delivery and receipt of written notice of same at any time following the aforementioned conviction. It shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause. For the purposes of this act, good cause for terminating, cancelling, or failing to renew a franchise shall be limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise.
Section 56:10-6. Transfer of franchise; notice; approval; agreement of compliance.

*410 It shall be a violation of this act for any franchisee to transfer, assign or sell a franchise or interest therein to another person unless the franchisee shall first notify the franchisor of such intention by written notice setting forth in the notice of intent the prospective transferee's name, address, statement of financial qualification and business experience during the previous 5 years. The franchisor shall within 60 days after receipt of such notice either approve in writing to the franchisee such sale to proposed transferee or by written notice advise the franchisee of the unacceptability of the proposed transferee setting forth material reasons relating to the character, financial ability or business experience of the proposed transferee. If the franchisor does not reply within the specified 60 days, his approval is deemed granted. No such transfer, assignment or sale hereunder shall be valid unless the transferee agrees in writing to comply with all the requirements of the franchise then in effect.
Section 56:10-9. Action against franchisor; defenses.
It shall be a defense for a franchisor to any action brought under this act by a franchisee, if it be shown that said franchisee has failed to substantially comply with requirements imposed by the franchise and other agreements ancillary or collateral thereto.
Section 56:10-10. Action against franchisor; damages; injunction; costs.
Any franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where appropriate, shall be entitled to injunctive relief. Such franchisee, if successful, shall also be entitled to the costs of the action including but not limited to reasonable attorney's fees.

ISSUE I.
Although a plain and ordinary reading of section 56:10-9 would seem to enable a franchisor such as MBNA to assert the original franchisee's substantial noncompliance with the franchise agreement as a defense to an action brought to compel a transfer of the franchise, we agree with the trial court's ruling and rationale with respect to this issue because to give section 56:10-9 the literal interpretation it suggests would essentially render useless the "if the franchisor does not reply within the specified 60 days, his approval is deemed granted" language of section 56:10-6 and would undo the New Jersey legislature's attempt to correct the unequal bargaining power between franchisors and franchisees. Westfield Centre Service, Inc. v. Cities Service Oil Co., 86 N.J. 453, 432 A.2d 48 (1981). Courts are not required to give a statutory provision a literal meaning where to do so would result in an almost absurd interpretation. Cf. Griffis v. State, 356 So.2d 297 (Fla. 1978); Austin v. State ex rel. Christian, 310 So.2d 289 (Fla. 1975).
In reaching our conclusion, we adopt the trial court's explanation of why it struck this particular affirmative defense. The trial court stated:
[P]laintiffs [Fifth Avenue and Hawkins] assert that application of N.J.Stat. § 56:10-9 to an action to compel franchise transfer pursuant to N.J.Stat. § 56:10-6 is wholly inconsistent with the terms and intent of the New Jersey and Florida statutory schemes. Plaintiffs assert that MBNA seeks to punish Hawkins for an alleged breach by Fifth Avenue of its Mercedes-Benz dealer agreement. Plaintiffs assert that the New Jersey Franchise Practices Act (like its Florida counterpart, Fla. Stat. § 320.60 et seq. (1971)) was enacted in order to halt the harsh practices large manufacturers had inflicted upon franchisees. See, e.g., DMV v. MBNA, 408 So.2d 627, 630 (Fla. 2d DCA 1981). The statute was not intended to allow such practices to continue under statutory sanction. (Citation omitted).
In this regard, plaintiffs have argued that the New Jersey legislature did not *411 intend that MBNA should be able, in effect, to destroy the franchise through idleness by blocking an approved sale to a dealer of good qualifications by means of a notice of termination. Plaintiffs assert that the New Jersey transfer statute is a self-contained statute designed to encourage uninhibited transfers: [quotation from Westfield Centre Service at 57-58 omitted].
Plaintiffs assert that the transfer statute allows the franchisee to recoup his substantial investment in the franchise while accommodating the legitimate business interest of a franchisor by insuring that the transferee is qualified. They assert that assuming arguendo that Fifth Avenue was a "bad dealer", it is the intent and purpose of 56:10-6 to encourage such a dealer to transfer its franchise to a dealer of Hawkins' credentials. As a practical matter, the public interest would be totally ignored by an interpretation of law that expressed a preference for time consuming termination proceedings, during which the franchise would remain idle, over a transfer to a qualified dealer. Plaintiffs assert that the only interest to be served under MBNA's interpretation is one of revenge of the manufacturer over an allegedly derelict franchisee. They contend such a motive is devoid of the New Jersey (and Florida) statutory scheme... .
Moreover, the court has reviewed the Simmons [v. General Motors Corp., 180 N.J. Super. 522, 435 A.2d 1167 (1981)] decision presented by MBNA in reaching its decision, and distinguishes that case on the basis that in Simmons the manufacturer justifiably and timely rejected the proposed transferee. In Simmons the seller and purchaser (unlike in this case) secretly concluded the sale, and upon being caught by the manufacturer misrepresented their activities. This was a substantial non-compliance with the franchise agreement and grounds for termination... . Perhaps most significantly, the court fails to see how a transfer or a sale of an automotive franchise to a dealer who meets qualifications of good character, strong financial ability, and adequate business experience would be damaging to the manufacturer's name and reputation, particularly in the situation where the franchise seller is in non-compliance [with the franchise agreement]. Indeed, the court would expect the manufacturer to welcome such a change from a franchise holder that the manufacturer considers to be a dealer in substantial breach of its franchise agreement.
We wish to point out that our agreement with the trial court's ruling with respect to the above issue may not preclude a franchisor from raising section 56:10-9 as an affirmative defense to an action brought by a franchisee for damages for failure to transfer pursuant to section 56:10-6. Moreover, it is absolutely clear that a franchisor can raise section 56:10-9 as a defense to an action brought by a franchisee to prevent a termination or an action for damages for wrongful termination.

ISSUE II.
We reverse the trial court's ruling that MBNA had breached a common law duty of good faith and commercial reasonableness with respect to not recognizing an assignment between Fifth Avenue and Hawkins. Our examination of the record leads us to the conclusion that the actions taken by MBNA in dealing with Fifth Avenue and Hawkins did not constitute a breach of any duty that might have been owed. Simmons v. General Motors Corp., 180 N.J. Super. 522, 435 A.2d 1167 (1981).

ISSUE III.
We hold the trial court erred in striking MBNA's affirmative defense which asserted that the 1980 revised Mercedes-Benz standard dealer agreement could not be used by Fifth Avenue or Hawkins as a basis for a cause of action to compel a transfer of the franchise. The reason for our holding is that the trial court made its determination by applying Florida law, in particular section 320.641(3). *412 See Department of Motor Vehicles v. Mercedes-Benz of North America, supra. Accordingly, we remand this issue to the trial court so that it may reconsider, under the laws of New Jersey, what effect the revised 1980 agreement would have on Fifth Avenue's and Hawkins' second cause of action.
We AFFIRM the permanent injunction, but REMAND the cause for further proceedings consistent with this opinion.
DANAHY and CAMPBELL, JJ., concur.
NOTES
[1] In Department of Motor Vehicles v. Mercedes Benz of North America, 408 So.2d 627 (Fla. 2d DCA 1981), this court held that New Jersey law was to be applied to the action brought by appellees to compel a transfer of the franchise from the original franchisee to the proposed franchisee.
[2] We note an action was not brought against the franchisor for wrongful termination. In any event, we add that the purported notice of termination was not effective because MBNA did not comply with the provisions of section 56:10-5, New Jersey Statutes (1971).
[3] One of MBNA's contentions on appeal is that Hawkins does not have independent standing to bring any causes of action under New Jersey law, including an action to compel a franchise transfer, because section 56:10-10 only allows "[a]ny franchisee" to bring an action against the franchisor for violations of the Act. Whatever the merits of this argument, MBNA failed to raise the issue below and for purposes of this appeal (the determination of the validity of the order granting the transfer) we will consider the action to compel transfer under the statute to be brought by MBNA with Hawkins as an indispensable intervening party. However, on remand, the trial court should address the standing issue in regard to whether Hawkins can recover money damages under Count I.
[4] The trial on damages had not yet occurred at the time this appeal was filed.
[5] We affirm the trial court's findings of fact and conclusions of law regarding whether Fifth Avenue gave notice in accordance with the first sentence of section 56:10-6 and whether MBNA properly rejected Hawkins pursuant to the second sentence of section 56:10-6. We further affirm all other findings of fact and conclusions of law not inconsistent with this opinion.