561 So.2d 620 (1990)
MERCEDES-BENZ OF NORTH AMERICA, a Florida Corporation, Appellant/Cross-Appellee,
v.
MIKE SMITH PONTIAC GMC, INC., a Florida Corporation, Appellee/Cross-Appellant,
v.
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Appellee.
MERCEDES-BENZ OF NORTH AMERICA, INC., Appellant,
v.
MIKE SMITH PONTIAC GMC, INC., Jerome Z. Ginsburg, Ronald Cutler, Terry Taylor, Billy R. Grubbs, Terry Taylor Investments, Inc., and Department of Highway Safety and Motor Vehicles, Appellees.
Nos. 87-2041, 87-2042.
District Court of Appeal of Florida, First District.
May 3, 1990.
Rehearing Denied June 14, 1990.
William J. Dunaj and Teresa Ragatz of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, for appellant/cross-appellee.
John Radey and Mark Freund of Aurell, Radey, Hinkle & Thomas, Tallahassee, for appellees/cross-appellant.
MINER, Judge.
This case involves consolidated appeals and a cross appeal from two final orders of the Department of Highway Safety and Motor Vehicles (Department). In Case No. *621 87-2042, the Department dismissed with prejudice appellant's complaint which sought to prevent a proposed transfer in ownership of an automobile dealership. In Case No. 87-2041, the Department dismissed as moot an action brought by appellee which challenged appellant's termination of appellee's franchise. We affirm.
In July 1983, appellant, Mercedes-Benz of North America (MBNA), and appellee, Mike Smith Pontiac GMC, Inc. (MSP), entered into a Mercedes-Benz Passenger Car Dealer Agreement, which permitted MSP to sell and service Mercedes-Benz automobiles. When it expired on December 31, 1983, a new agreement was entered into to cover the two-year period from January 1, 1984 through December 31, 1985. Paragraph 15D(g) of the agreement provided as follows:
D. Dealer [MSP] and MBNA agree that the following acts or events, all within the control of the Dealer or originating from actions taken by Dealer or its management or owners, are so contrary to the spirit and purposes of this Dealer Agreement as to warrant its termination:
... .
(g) Any disagreement between or among the Dealer Operators or Owners of Dealer which in MBNA's opinion may adversely affect the conduct of Dealer's business or the interests of MBNA, providing the disagreement continues three (3) months after notice to Dealer by MBNA that the disagreement must be resolved.
In the summer of 1985 MBNA became aware of a dispute between MSP's dealeroperator and primary dealer-owner.[1] By letter dated July 1, 1985, MBNA invoked Paragraph 15D(g) and advised MSP to resolve its management dispute within ninety days or face possible termination of the franchise agreement. By October 23, the ninety day period had expired, and MBNA sent a letter informing MSP that insufficient progress had been made in resolving the management dispute. The letter, which was signed by a Vice President of MBNA, charged breaches of various provisions in addition to Paragraph 15D(g), and concluded as follows:
Therefore, in conformity with the Florida Franchise Practices Act, we hereby inform you of our intent to terminate your Mercedes-Benz Passenger Car Dealer Agreement on January 31, 1986 which is at least 90 days hence from the order to provide sufficient notice to affect the termination of the Agreement, we will extend the Dealer Agreement until January 31, 1986. This notice and extension is pursuant to the provisions of Paragraphs 15 and 16 of the Mercedes-Benz Passenger Car Dealer Agreement.[2]
On January 16, 1986, MSP filed an administrative complaint with the Department pursuant to section 320.641, Florida Statutes (1985), alleging unfair termination of the dealer agreement. Because the complaint was filed within the ninety day notice period, the dealer agreement continued in effect by operation of section 320.641(3), *622 Florida Statutes (1985),[3] until the termination dispute was resolved.
In October 1986, prior to the final hearing, MSP proposed a transfer of the dealership to appellee, Ronald Cutler. On December 12, one week after the final hearing, MBNA informed MSP that it found Cutler an unacceptable transferee and would not approve the proposed transfer. On December 15, MBNA filed an administrative complaint to challenge the proposed transfer. Although section 320.643(2), Florida Statutes (1985), was the basis for the complaint, MBNA asserted that it was not required to comply with the statute because its dealer agreement with MSP was executed prior to the statute's enactment. According to MBNA, the existing agreement was executed on January 1, 1984, and was therefore not subject to section 320.643(2) which came into effect on May 31, 1984. The hearing officer stayed MBNA's transfer challenge pending the outcome of MSP's termination proceeding.
The hearing officer issued his recommended order in the termination action on May 1, 1987. MBNA was justified in terminating the dealership based upon the management dispute within MSP. Apparently, negotiations had been ongoing between MBNA, MSP and the proposed transferee, because shortly after issuance of the recommended order MBNA filed a notification of status in its transfer challenge; according to MBNA, a transfer had been approved on modified terms, and its transfer challenge would become moot upon closing of the sale.
However, in June 1987, MSP informed MBNA that the proposed transfer would not take place; instead, MSP proposed a new transfer to appellees Terry Taylor, Billy Grubbs, and Terry Taylor Investments.[4] On August 28, 1987, MBNA, having previously abandoned its challenge to the Cutler transfer, filed a new complaint challenging the Taylor transfer. Again, MBNA's complaint was filed pursuant to section 320.643(2), and again, MBNA asserted that the statute could not be applied to its agreement with MSP. The complaint, which was verified by MBNA's President, did not allege that the Taylor transferees were unqualified, nor did it explain why MBNA found them unacceptable. In addition, the verification, which was required by section 320.643(2), merely stated: "I have read the above Complaint and, to the best of my knowledge, the allegations are true and correct." MSP responded with a motion to dismiss the complaint for its failure to challenge the qualifications of the proposed transferees, and for the inadequacy of the verification.
On November 9, 1987, the Department granted MSP's motion on the grounds asserted therein, and dismissed MBNA's complaint with prejudice. In addition, the Department entered a final order dismissing MSP's termination action as moot. According to the Department, MBNA failed to file a proper transfer challenge within the sixty day period prescribed by section 320.643(2). Consequently, the MSP agreement was amended by operation of law and the Taylor transferees were now the holders of the MBNA franchise. This appeal ensued.
On appeal, MBNA argues that the Department based the dismissal of the transfer challenge upon certain provisions in section 320.643, Florida Statutes, which *623 were not in existence at the time the parties executed the dealer agreement. MBNA points out that on January 1, 1984, when the two-year extension of the agreement became effective, there was no requirement that a licensee[5] file a verified complaint in order to prevent a proposed transfer of the dealership. Rather, it was sufficient that the licensee inform the dealer in writing within sixty days of notice of the proposed transfer, that the proposed transferee was unacceptable. Although the licensee was required to provide "material reasons" for rejecting the transferee, and acceptance could not be withheld unreasonably, it was nowhere required that the licensee justify its rejection by making reference to the particular shortcomings in the transferee's character or business experience. See § 320.643, Fla. Stat. (1983). According to MBNA, the application of amended section 320.643 constituted an impairment of the dealer agreement in violation of the Florida Constitution, the U.S. Constitution, and section 320.701, Florida Statutes (1985).[6] MBNA further argues that even if the amendments are found applicable, its complaint was properly verified and provided valid grounds for challenging the proposed transfer.
The main issue on appeal concerns the applicability of the extensive amendments in chapter 84-69, Laws of Florida, to the dealer agreement between MBNA and MSP. These amendments, which refined and particularized portions of Florida's dealer protection scheme, provided a procedure through which a licensee could challenge a proposed transfer. As amended, section 320.643(2)(a), Florida Statutes (1985), requires that licensees be notified of a proposed transfer, and further provides:
A licensee who receives such notice may, within 60 days following such receipt, file with the department a verified complaint for a determination that the proposed transferee is not a person qualified to be a transferee under this section... . If the licensee fails to file such verified complaint within such 60-day period or if the department, after a hearing, dismisses the complaint or renders a decision other than one disqualifying the proposed transferee, the franchise agreement between the motor vehicle dealer and the licensee shall be deemed amended in accordance with the determination and order rendered, effective upon compliance by the proposed transferee with any conditions set forth in the determination or order.
Ch. 84-69, § 8, Laws of Fla. The effective date of the amendments was May 31, 1984. Ch. 84-69, § 14, Laws of Fla.
MBNA correctly points out that the two-year extension of the dealer agreement predated the 1984 amendments. However, we agree with MSP that a further extension occurred in October 1985, when MBNA communicated its intent to terminate the franchise and extended the agreement for one month. Although we recognize that the extension was MBNA's means of providing the requisite ninety days notice prior to termination,[7] we note that this extension was accomplished pursuant to Paragraph 16 of the dealer agreement and was not merely an unspoken continuation of the franchise relationship. Because the dealer agreement was extended after the effective date of the amendments, application of the amended version of section 320.643 *624 does not operate to impair MBNA's contractual rights.
We agree with the Department that MBNA's complaint did not meet the requirements of section 320.643(2)(a), Florida Statutes (1985). The transfer challenge envisioned in this section must allege that the proposed transferee is not qualified under the terms of the statute. The only "qualifications" referred to in section 320.643 are the transferee's moral character, and ability to meet any reasonable and uniformly applied standard of the licensee relating to business experience.[8] In the instant case, MBNA's complaint was silent as to the qualifications of the Taylor transferees. In fact, the only basis for MBNA's complaint was its fear that Cutler, the first-proposed transferee, would successfully force a transfer under the original transfer agreement.[9] Since this is not a proper basis for a transfer challenge, the Department correctly dismissed the complaint. The complaint's verification, which was conditional and therefore inadequate, constituted further grounds for dismissal. See United Bonding Insurance Co. v. Dura-Stress, Inc., 243 So.2d 244 (Fla. 2d DCA 1971). Although MBNA filed an amended complaint with proper verification, the complaint remained deficient in failing to challenge the qualifications of the proposed transferees. In addition, the amended complaint was not submitted until after the time for filing had expired and the final order of dismissal had been entered.
MBNA also asserts that the termination action was improperly dismissed as moot based upon the Department's mistaken belief that a proposed transfer must preempt ongoing termination proceedings. According to MBNA, the law does not lend such deference to transfers. MBNA argues that such a result would make termination a dead letter because any attempted termination would be subject to indefinite and seemingly limitless delay as the dealer could propose a succession of transfers.
We disagree with MBNA, and find that the Department was not required to proceed with the termination action in the face of an impending transfer. When a licensee challenges a proposed transfer under section 320.643, the franchise agreement is preserved until the matter is resolved; the Department is required to expedite the transfer challenge. See § 320.643(2)(b), Fla. Stat. (1985). Even if the dealer has already invoked section 320.641(3) to contest an attempted termination of the franchise agreement, the termination statute clearly envisions that a transfer under section 320.643 can take place. The termination statute provides that a replacement dealer can be named under section 320.643 in the midst of termination proceedings. Thus, the Department correctly dismissed the termination action as moot after the transfer took place by operation of law.
We also disagree with MBNA's assertion that there was material error in the Department's failure to issue a final order within ninety days of the recommended order. Shortly after issuance of the recommended order, MBNA filed its notification of status which announced that a transfer had been agreed upon and the termination action would shortly become moot. The resulting delay was necessitated by the transfer, and did not impair the fairness of the termination proceedings or the correctness of the action. See Department of Transportation v. Courtelis Co., 436 So.2d 92 (Fla. 1983); Department of Business Regulation v. Hyman, 417 So.2d 671 (Fla. 1982); § 120.68(8), Fla. Stat. (1985).
Lastly, we find no merit in MSP's cross appeal, which asserts that the termination action should not have been dismissed as moot while its request for attorney's fees *625 remained to be resolved. The actual controversy in the termination action became moot with the transfer of the dealership. The mere possibility that MSP could eventually be awarded attorney's fees is an insufficient basis for continuing otherwise purposeless litigation.
In sum, we find that the Department correctly dismissed MBNA's flawed transfer challenge. A transfer then took place by operation of law, and the termination action was properly dismissed as moot. Thus, we affirm the Department's action.
SMITH, J., and FORD L. THOMPSON, Associate Judge, concur.
NOTES
[1] This dispute culminated in the ouster of the dealer-operator, Michael Smith, by the primary dealer-owner, Jerome Ginsburg. Apparently, Ginsburg owned seventy-five percent of MSP's stock, and held stock transfer documents executed in blank by Smith for the remaining twenty-five percent. Ginsburg also possessed undated letters of resignation executed by Smith. When Ginsburg used these documents to oust Smith in June 1985, Smith sought injunctive relief in Circuit Court for Volusia County. See Mike Smith Pontiac, GMC, Inc. v. Smith, 486 So.2d 89 (Fla. 5th DCA 1986).
[2] Paragraph 16 of the dealer agreement provides for the extension or renewal of the agreement:

This Agreement can be extended or renewed only through an express written instrument to that effect and only if such instrument is duly executed on behalf of MBNA by [the President or a Vice President]. Any business relations of any nature whatsoever between MBNA and Dealer after the expiration of this Agreement or after its prior termination pursuant to Paragraph 15 of this Agreement, without such written extension or renewal shall not operate as an extension or renewal of this Agreement. Nevertheless, all such business relations, so long as they are continued, shall be governed by terms identical with the provisions of this Agreement.
[3] Section 320.641(3) provides as follows:

Any motor vehicle dealer whose franchise agreement is discontinued, canceled, not renewed, modified, or replaced may, within the 90-day notice period, file with the department a verified complaint for a determination of whether such action is an unfair or prohibited discontinuation, cancellation, nonrenewal, modification, or replacement. Agreements and certificates of appointment shall continue in effect until final determination by the department of the issues raised in such complaint by the motor vehicle dealer, and, except pursuant to s. 320.643, no replacement motor vehicle dealer shall be named for this point or location to engage in business prior to the final adjudication by the department on the complaint.
Section 320.643, Florida Statutes (1985), establishes the procedure by which a dealer may transfer his franchise to a transferee who the manufacturer finds acceptable or, at least, does not find unacceptable.
[4] This caused Cutler to bring an action against MSP and its dealer-owner, Jerome Ginsburg, seeking specific performance of the sale agreement between Cutler and MSP.
[5] Within the context of Florida's dealer protection scheme, a "licensee" includes the manufacturers, distributors and importers that are required to be licensed by the Department in order to have their vehicles sold in this state. See §§ 320.60(8) and 320.61, Fla. Stat. (1985). MBNA is included within this definition.
[6] Section 320.701, Florida Statutes (1985), was included among the 1984 amendments to specifically address the question of applicability to existing franchise agreements. The statute provides as follows:

This act applies to all presently existing or established systems of distribution of motor vehicles in this state, except to the extent that such application would impair contractual agreements in violation of the Florida Constitution or Federal Constitution. All agreements renewed or entered into subsequent to May 31, 1984, will be governed by this act.
[7] See § 320.641(1)(a), Fla. Stat. (1983).
[8] Although the notice of transfer must include information on the transferee's financial qualifications, a transferee's lack of finances is not mentioned as a basis for the licensee's withholding acceptance under subsection 1 or for bringing a challenge under subsection 2. We do not offer an opinion as to whether or under what circumstances financial qualifications constitute fertile grounds for challenge under section 320.643.
[9] See note 4, infra.