MIKE SMITH PONTIAC, GMC, INC., Plaintiff–Counterdefendant–Appellant, Cross–Appellee,

v.

MERCEDES–BENZ OF NORTH AMER-ICA, INC., Defendant–Counterclaimant, Counterdefendant–Appellee, Cross–Appellee, Cross–Appellant,

Federal Insurance Company, Defendant–Counterclaimant,

Terry Taylor; Terry Taylor Investments, Inc.; Billy Grubbs, Counterdefendants–Appellants.

No. 92–3124.

United States Court of Appeals, Eleventh Circuit.

Sept. 21, 1994.

Alan C. Sundberg, F. Townsend Hawkes, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, FL, Coble Barkin, Gordon, Morris & Reynolds, P.A., Law Office of James D. Adams, Boca Raton, FL, for Terry Taylor, et al.

David E. Peterson, Terry C. Young, John A. Reed, Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, FL, for Mike Smith Pontiac, GMC, Inc.

William J. Dunaj, Teresa Ragatz, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, FL, for Mercedes.

Before BLACK and BARKETT, Circuit Judges, and HILL, Senior Circuit Judge.

BARKETT, Circuit Judge:

Appellants, Cross–Appellees Mike Smith Pontiac GMC, Inc. (MSP) and Terry Taylor, Billy Grubbs and Terry Taylor Investments (collectively, Taylor) appeal the district court's summary judgment that the Florida Automobile Dealer's Act, Section 320.697, Florida Statutes (1985) does not mandate a treble damage award. Appellee, Cross–Appellant Mercedes–Benz of North America, Inc. (Mercedes–Benz) cross-appeals the district court's summary judgment that Mercedes–Benz violated § 320.643 and that § 320.697 provides standing to a prospective purchaser of an automobile dealership. We reverse the district court's decision that the award of treble damages be left to the jury's discretion. In all other respects, we affirm.

## ISSUES

The complaint in this case was brought pursuant to the Florida Automobile Dealer's Act (the Act), which provides, in pertinent part, that "[a]ny person who has suffered pecuniary loss or who has been adversely affected because of a violation of §§ 320.60–320.70 ... has a cause of action ... and may

recover damages ... in an amount equal to 3 times the pecuniary loss." § 320.697. There are three issues we must decide in this case. The first is whether the district court erred in holding that appellant, Taylor, has standing to bring a claim under § 320.697. The second issue is whether the district court erred in declaring that Mercedes–Benz violated § 320.643. In the event we answer the second question in the affirmative, we must decide whether the district court erred in finding that Florida Statutes § 320.697 does not mandate the trebling of damages.

## FACTS

In July 1983, appellant MSP and appellee Mercedes–Benz entered into a Mercedes–Benz Passenger Car Dealer Agreement (Dealer Agreement), which permitted MSP to sell and service Mercedes–Benz automobiles. The agreement subsequently was extended to December 31, 1985. Jerome Ginsburg (Ginsburg) owned seventy-five percent of MSP's stock and Mike Smith (Smith), the dealer-operator, owned twenty-five percent. In July 1985, a dispute arose between Ginsburg and Smith prompting Ginsburg to oust Smith from the dealership with the use of undated letters of resignation previously executed by Smith. In light of this dispute, Mercedes–Benz invoked Paragraph 15D(g) of the Dealer Agreement, which allows for termination due to any disagreements between the dealer operators and owners that adversely affect the dealer's business and continue for three months after Mercedes–Benz notifies the dealer that the disagreement must be resolved. On October 23, 1985, Mercedes–Benz notified MSP of its intent to terminate the Dealer Agreement because MSP had not sufficiently resolved the management dispute.[1]

Pursuant to § 320.641, MSP filed an administrative complaint with the Department of Highway Safety and Motor Vehicles (Department), claiming unfair termination of the Dealer Agreement. In October 1985, before the final hearing on the termination action, MSP proposed a transfer of the franchise to Ronald Cutler (Cutler). On December 15, 1986, pursuant to § 320.643, Mercedes–Benz filed an administrative complaint challenging the proposed transfer of the franchise to Cutler.

On May 1, 1987, the hearing officer concluded that termination of the Dealer Agreement due to MSP's violation of Paragraph 15D(g) would be appropriate. Before the Department completed its review of the hearing officer's Recommended Order, Mercedes–Benz notified the Department that it had approved the Cutler transfer, rendering the termination action moot. However, in June 1987, MSP notified Mercedes–Benz that the Cutler transfer would not take place, and instead, MSP proposed to transfer the franchise to appellants, Taylor. The circumstances surrounding this proposed transfer form the foundation of this lawsuit.

Mercedes–Benz filed a complaint with the Department challenging the Taylor transfer on August 28, 1987. However, Mercedes–Benz' transfer challenge did not address the qualifications of the proposed transferee as mandated by the statute. Instead, Mercedes–Benz objected on the ground that by approving the transfer it would open itself up to potential lawsuits brought by either Cutler or Smith, each claiming to be the rightful dealer. Because Mercedes–Benz challenged the transfer rather than the qualifications of the transferee, MSP filed a motion to dismiss the complaint which was granted on November 9, 1987.[2]

Mercedes–Benz appealed the Department's ruling, contending, inter alia, that it properly opposed the Taylor transfer. The First District Court of Appeal affirmed the Department's order and found that amended § 320.643 applied to Mercedes–Benz, that Mercedes–Benz improperly challenged the Taylor transfer, and thus that the transfer took place by operation of law. *Mercedes–Benz of North America v. Mike Smith Ponti-*

---

1. Section 320.641(1)(a) requires a manufacturer to give 90 days notice of its intent to cancel a dealer franchise agreement. As a result, the Dealer Agreement was extended through January 31, 1986.

2. As a result, the Taylor transfer was effectuated by operation of law pursuant to § 320.643. At the time of dismissal, the Department dismissed MSP's unfair termination action as moot.

*ac GMC,* 561 So.2d 620, 625 (Fla. 1st DCA 1990). The Florida Supreme Court denied review of the case. *Mercedes–Benz of North America, Inc. v. Mike Smith Pontiac GMC, Inc.,* 574 So.2d 142 (1990). Appellants brought this diversity action in federal court in the District of New Jersey. On Mercedes–Benz' motion, the action was transferred to the Middle District of Florida.

## DISCUSSION

### I. *Standing of a Prospective Franchisee*

■ Mercedes–Benz first contends that Taylor lacks standing to pursue a claim under § 320.697 because the statute was not intended to provide a cause of action to a prospective franchisee. Taylor rejects this interpretation and argues that a plain reading of the statute makes clear that the legislature's use of the phrase "any person" was meant to include prospective franchisees. The question of whether a prospective franchisee has standing under § 320.697 is one of first impression.

■ The rules of statutory construction dictate that "[w]hen the language of a statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and ordinary meaning." *In re McCollam,* 612 So.2d 572, 573 (Fla.1993); *Birnholz v. 44 Wall Street Fund, Inc.,* 880 F.2d 335, 341 (11th Cir.1989). Absent an ambiguity, the statute's plain meaning prevails. *Streeter v. Sullivan,* 509 So.2d 268, 271 (Fla.1987); *Holly v. Auld,* 450 So.2d 217, 219 (Fla.1984). No further inquiry is required unless "an unreasonable or ridiculous conclusion would result from a failure to do so." *In Re McCollam,* 986 F.2d 436, 437 (11th Cir.1993) (quoting *In re McCollam,* 612 So.2d at 573).

Section 320.697 provides that "[a]ny person who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of ss. 320.60–320.70 ... has a cause of action against the licensee for damages." The use of the phrase "any person" does not lend itself to ambiguity and this court finds none. The statute's plain meaning controls, and, accordingly, we find

that the statute grants a potential franchisee standing to bring suit.

### II. *Did Mercedes–Benz Violate § 320.643?*

We next consider whether the state proceedings established that Mercedes–Benz violated § 320.643 and whether the district court was correct in relying on these proceedings in granting partial summary judgment for MSP and Taylor on this issue.

#### a. *Section 320.643*

Section 320.643 provides a procedure through which a licensee may challenge a proposed transfer of an automobile dealership. Section 320.643(1) provides that within 60 days of receiving notice of a proposed transfer, a licensee "shall ... inform the dealer either of his approval of the transfer ... *or of the unacceptability of the proposed transferee,* setting forth the material reasons for the rejection." § 320.643 (emphasis added). If the licensee wishes to object, it may "within 60 days following [notice], file with the [Department] a verified complaint for a determination that the proposed transferee is not a person qualified to be a transferee under this section." Fla.Stat. § 320.643(1). An objection to a proposed transferee on grounds other than the transferee's "good moral character" or the transferee's failure to meet the licensee's "written, reasonable, and uniformly applied standards or qualifications ... relating to business experience of the [motor vehicle dealer's] executive management" is presumed to be unreasonable. *Id.*

Section 320.643(2)(a) provides that "a licensee shall not ... prevent ... any motor vehicle dealer ... from selling ... or otherwise disposing of ... the equity interest ... in such motor vehicle dealer to any other person ... unless the licensee proves at a hearing pursuant to this section that such transfer ... is to a person who is not, or whose controlling executive management is not, of good moral character." A licensee may file with the Department a complaint for a determination "that the proposed transferee is not a person qualified to be a transferee under this section." *Id.*

### b. *Collateral Estoppel*

Before we can determine whether Mercedes–Benz violated § 320.643, we must review the action of the Florida courts and decide whether they have resolved this question or any questions predicate to this determination with finality. Mercedes–Benz argues that the Florida courts have not resolved this question and that it is entitled to a de novo determination of all factual and legal issues necessary to decide this pivotal issue. MSP argues that the Florida courts have fully adjudicated this issue and that this court is precluded by principles of res judicata from readdressing it.

■ Collateral estoppel, or "issue preclusion," applies when a judgment "[forecloses] relitigation of a matter that has been litigated and decided." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1501 (11th Cir.1984). Issues actually litigated in a state court proceeding are entitled to the same preclusive effect in a subsequent federal suit. *Migra*, 465 U.S. at 83, 104 S.Ct. at 897. Further, res judicata principles apply to administrative hearings. *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

■ State law governs whether a state court judgment bars a subsequent federal diversity action under the doctrine of collateral estoppel. *Precision Air Parts*, 736 F.2d at 1503. The federal standard for applying collateral estoppel principles agrees with the legal standard under Florida law. *Vazquez v. Metropolitan Dade County*, 968 F.2d 1101, 1107 (11th Cir.1992). This circuit has previously established three prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action. *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1360 (11th Cir.1985). Further, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Precision Air Parts*, 736 F.2d at 1504. To evaluate whether collateral estoppel applies, we must first identify the issue decided in the prior litigation.

■ Neither state tribunal was required to determine, specifically, whether § 320.643 was violated. Instead, the state proceedings were framed to evaluate whether Mercedes–Benz met its burden under § 320.643 and *properly* withheld its consent to the Taylor transfer. Among several arguments, appellants claimed that Mercedes–Benz delayed and impeded the transfer by improperly using the statute to object because it could not object on the basis of Taylor's qualifications. On appeal, the Florida district court was briefed by the parties on the question of whether a licensee could properly object to a transfer on grounds *other* than those specified in § 320.643, namely, qualifications and character.

It is clear from the language of § 320.643 that a licensee has a right to object to a proposed transferee and, when properly asserted, the objection is free from fear of reprisal under § 320.697. The question, however, is whether the only permissible basis for objecting and withholding approval to a proposed transferee is a transferee's qualifications and moral character. Mercedes–Benz recognizes that the express statutory refusal of a proposed franchisee under § 320.643(2)(a) is limited to specific criteria, but it argues that § 320.643(1) inferentially permits other reasons for opposing the franchisee if they are not unreasonable. Section 320.643(1) provides that "acceptance by the licensee of the proposed transferee shall not be unreasonably withheld," and that an objection to a proposed transferee on grounds other than the transferee's good moral character or qualifications is presumed to be un-

reasonable. Mercedes–Benz has maintained throughout the state litigation that the presumption of unreasonableness is a rebuttable one and that its opposition to the transfer for fear of being subjected to liability was appropriate rebuttal.

However, the Florida court affirmed the Department's order because: "[i]n the instant case, Mercedes–Benz' complaint was silent as to the qualifications of the Taylor Transferees.... Since this is not a proper basis for a transfer challenge, the Department correctly dismissed the complaint." *Mike Smith Pontiac*, 561 So.2d at 624. The court specifically decided that Mercedes–Benz' challenge was improper under the statute and that the only grounds for objection to a transfer are the proposed transferee's qualifications and moral character.

**c.  *What constitutes a violation of § 320.-643?***

The question then becomes what is the legal effect of bringing an improper challenge under § 320.643. The Florida Legislature enacted the Dealer Protection Act (the Act) to ensure fair dealing at all levels among all participants in the distribution and sale of motor vehicles, and to redress the economic imbalance which naturally exists between national manufacturers and local dealers. *International Harvester Co. v. Calvin*, 353 So.2d 144, 147 (Fla. 1st DCA 1977). The express purpose of the statute is to "protect the public health, safety, and welfare ... by regulating the licensing of ... dealers and manufacturers, maintaining competition, providing consumer protection and fair trade and providing minorities with opportunities for full participation as ... dealers." Fla. Stat. § 320.605. This legislation is directed toward eliminating the "harsh practices large manufacturers had inflicted upon franchisees." *Mercedes–Benz of North America, Inc. v. Department of Motor Vehicles*, 455 So.2d 404, 410 (Fla. 2d DCA 1984); *see International Harvester*, 353 So.2d at 147.

By *improperly* opposing a transfer, i.e., objecting to a proposed franchisee for reasons other than its qualifications and moral character, a manufacturer can effectuate the kinds of abuses Chapter 320 was designed to prevent. The statute was intended to facilitate the transferability of the franchise. Delaying this process and thus suspending the desired transfer can result in significant financial costs. If this conduct did not result in a violation under this admittedly complicated statutory scheme, it is difficult to imagine what type of behavior would. Accordingly, where a manufacturer opposes a transfer on grounds *not permitted* under § 320.643, that manufacturer must be deemed, under this scheme, to have violated this statute.

**d.  *Conclusion***

We review de novo a grant of summary judgment on grounds of collateral estoppel. *Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir.1989). Factual determinations underlying a district court's legal conclusions are to be upheld unless clearly erroneous. *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1244 (11th Cir. 1991). A predicate issue to finding a statutory violation of § 320.643 is whether an improper objection was made. The issue of whether Mercedes–Benz brought an improper challenge is identical to one brought before the state tribunals. Further, there can be no doubt that this issue was litigated in the state court and that the decision resulting in a transfer as a matter of law was premised on this determination. Further, on appeal, Mercedes–Benz was afforded an opportunity for a full and fair hearing to argue that its non-qualifications based objection was proper. Hence, this issue is res judicata. *See Greenblatt*, 763 F.2d at 1360. We therefore affirm the district court's decision granting partial summary judgment on the issue of Mercedes–Benz' liability for violating § 320.643.

**III.  *Treble Damages***

Finally we address the district court's ruling that the award of treble damages be left to the jury's discretion. While this issue is one of first impression, both Florida's legislature and courts have spoken concerning the purpose underlying the Dealer Protection Act. The Act was promulgated, in part, to ameliorate the abusive tactics and harsh practices automobile manufactur-

ers commonly imposed on their franchisees. *See Mercedes–Benz of North America*, 455 So.2d at 410. The legislature sought to achieve its goal of "protect[ing] the public health, safety, and welfare ... by regulating the licensing of ... dealers and manufacturers, maintaining competition, providing consumer protection and fair trade and providing minorities with opportunities for full participation as ... dealers." Fla.Stat. § 320.-605.

Appellants contend that § 320.697 is a remedial statute which plainly and unambiguously provides that, upon proof of a statutory violation, a manufacturer is liable for treble damages. As with the question of standing, we·are asked to ascertain the meaning of a Florida statute and again we look to the canons of statutory construction.

As stated above, "[w]hen the language of a statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and ordinary meaning." *Birnholz*, 880 F.2d at 341; *see also In re McCollam*, 612 So.2d at 573; *Streeter*, 509 So.2d at 271; *Holly*, 450 So.2d at 219. Merely because the term "shall" was not used does not necessitate a finding of discretionary trebling, for clearly the term "may" is capable of assuming a mandatory character. As with all statutory construction, meaning is determined by ascertaining the intent of the legislature, and words used in a statute must be construed in context and considered in light of the general purpose sought to be accomplished or the evil sought to be remedied. Of paramount importance is the statute's common sense reading. The question is whether legislative usage of the term "may," in the context of the trebling provi-

sion and taking into consideration the statute's purpose, is ambiguous.

By focusing on the language relevant to the specific issue of trebling, it becomes clear that the statute does not afford discretion to the trier of fact:

Any person who has suffered pecuniary loss ... may recover damages in an amount equal to three times the pecuniary loss....

Where the language of a law is clear, judges should not replace it with an unenacted legislative intent. Section 320.697 is clear and unambiguous; its plain language mandates the trebling of damages when "any person" requests them. *See Barry Cook Ford, Inc. v. Ford Motor Co.*, 616 So.2d 512, 516–17 (Fla. 1st DCA 1993).

■ We note in passing that even if the statute were deemed to be ambiguous, we would be compelled to find that it mandates the trebling of damages. Because the Dealer Protection Act is remedial[3] in nature and designed to promote the public good, its provisions should be interpreted broadly to effectuate its purpose. By enabling successful litigants to recoup treble damages, the legislature's concerns over adjusting the economic power of manufacturers and promoting fair dealing are more likely to be realized. *See International Harvester*, 353 So.2d at 147. Further, the incentive of treble damages is used by legislative bodies to encourage potential litigants to bring suit thereby effectuating private enforcement of statutory violations which further promotes the public good. *See, e.g., Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 485–86 & n. 10, 97 S.Ct. 690, 695–96 & n. 10, 50 L.Ed.2d 701 (1977).

---

**3.** "A remedial action is one that compensates an individual for specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public." *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir.1993). In deciding whether § 320.697 is remedial or penal, we must examine: "(1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; (2) whether recovery under the statute runs to the harmed individual or to the public; and (3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered." *Id.* (quoting *Murphy v. Household Fin.*

*Corp.*, 560 F.2d 206, 209 (6th Cir.1977)). Application of this three prong test leads us to find that the statute is remedial. First, the statute is clearly designed to provide a remedy to an individual wronged by a licensee's violation of the Act. Second, financial recovery runs to the individual, though in a broader context, the public is benefitted when a successful claim is brought under the statute. Third, an award of treble damages is not wholly disproportionate to a wrong that betrays the public welfare. *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 485–86 & n. 10, 97 S.Ct. 690, 695–96 & n. 10, 50 L.Ed.2d 701 (1977).

**535**

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court on the issue of mandatory trebling and remand for a determination of appropriate damages. In all other respects, the district court's judgment is affirmed.

AFFIRMED in part, REVERSED in part and REMANDED.

HILL, Senior Circuit Judge, dissenting:

I respectfully dissent, not to take issue with the Court's result or to offer a contrary resolution. I dissent because the questions presented are important, heretofore undecided, questions of Florida law and should be certified to the Florida Supreme Court.

The questions are: (1) Does a prospective transferee of an automobile franchise have standing to bring a claim under Section 320.-697 of the Florida Statutes (1985)? It seems clear that this statute was designed to protect holders of automobile dealerships. It says that it affords relief to "*[a]ny* person who has suffered pecuniary loss or has been otherwise adversely affected ..." (emphasis added). We hold that this extends protection to a proposed transferee of a dealership and announce that, literally, any person damaged may sue. Do we include prospective managers and employees of transferees, building contractors engaged to construct the new dealership facilities, and others?

(2) Is an automobile manufacturer deemed to have violated Section 320.643 of the Florida Statutes (1985) when it opposes a franchise transfer on grounds other than the transferee's qualifications and moral character? We hold that the act of an automobile manufacturer's calling to the Department of Highway Safety and Motor Vehicle's attention that the manufacturer hesitates to award the franchise to the person or firm stated as the proposed transferee because the manufacturer has been told, earlier, that another was to be the transferee violates the law and subjects the manufacturer to all damages suffered by anyone because of the delay. Must the manufacturer award a franchise to each of several transferees as to whom it has no objection to qualifications or moral char-

acter? Does good faith questioning of the bona fides of a proposed transfer subject the offender to damages?

(3) Does Section 320.697 of the Florida Statutes (1985) mandate the trebling of damages? We decide that, under Florida law, if one *may* bring an action for treble damages the court *may not* award less. I suggest that our interpretation may not predict the view of the state's supreme court accurately—though, of course, it may.

These questions have never been interpreted by the Florida Supreme Court. It should be invited to instruct us on the meaning of Florida law so that the first interpretation of the questions raised by this relatively obscure and unclear statute would be decisive and authoritative, one on which the people of Florida could rely.

I would certify these questions to the Florida Supreme Court. To this Court's failure to use this valuable mechanism,

I dissent.