[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2001
THOMAS K. KAHN
CLERK

_____

No. 99-15321

_____

D. C. Docket No. 98-CV-00863-CV-J-16B

JOHN PHILLIP RISLEY, individually,
J. STEPHEN RISLEY, JR., individually, et al.,

Plaintiffs-Appellants,

versus

NISSAN MOTOR CORP. USA,
a California corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 27, 2001)**

Before BLACK and MARCUS, Circuit Judges, and HANCOCK[*], District Judge.

BLACK, Circuit Judge:

_____

[*] Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

Appellee Nissan Motor Corporation distributes its automobiles through a nationwide network of independently-owned dealerships. Appellants are the former shareholders of two such dealerships located in Jacksonville, Florida. Appellants claim Appellee violated the Florida Automobile Dealer's Act, Fla. Stat. §§ 320.60-320.70 (1997).[1] For this violation, Appellants seek damages and attorney's fees pursuant to Fla. Stat. § 320.697. The district court granted summary judgment to Appellee. We affirm.[2]

## I. BACKGROUND[3]

Beginning in 1996, AutoNation,[4] a non-party, embarked on a strategy of purchasing automobile dealerships nationwide. In March 1997, AutoNation and Appellee met to discuss AutoNation's interest in acquiring Nissan dealerships.

---

[1] This case involved events that occurred in 1997 and 1998. Thus, in this opinion, all citations to the Florida Statutes refer to the 1997 version. However, the 2000 (and most recent) version of the statutes at issue in this case is identical to their 1997 version.

[2] Appellants also claim that Appellee is liable, under Florida law, for abuse of process and tortious interference of contract. The district court granted Appellee summary judgment on these claims. We affirm. *See* 11th Cir. R. 36-1.

[3] In their briefs, both parties state that they are in substantial agreement with the district court's recitation of the facts in its summary judgment order. Appellants Br. 2; Appellee Br. 3 n.1. Therefore, the facts we set forth in this opinion are drawn largely from the district court's order.

[4] AutoNation was previously known as Republic Industries, Inc.

Appellee believed that the meeting produced an oral contract, under which AutoNation agreed to limit its ownership of Nissan dealerships to 5% of those available nationally without any time limitation. AutoNation, however, denied entering into any oral contract.

Thereafter, AutoNation and Appellee continued negotiations with the goal of entering into a Parent Company Agreement (PCA) to govern AutoNation's ownership of Nissan dealerships. The only issue that remained unresolved was the time frame for the proposed ownership limits. On November 21, 1997, Appellee wrote a letter to AutoNation indicating that unless an agreement could be reached regarding the PCA, Appellee would reject any dealership transfers to AutoNation.

While the negotiations between AutoNation and Appellee were ongoing, Appellants were exploring the possibility of AutoNation's acquiring their two dealerships in Jacksonville, Florida. On November 24, 1997, Appellants and AutoNation entered into a merger agreement, under which Appellants would sell their equity interests in the two dealerships in exchange for employment contracts, stock options, and $ 6.7 million worth of AutoNation stock. Upon receiving notice of the merger agreement, Appellee informed Appellants in a letter dated December 22, 1997, that it had "significant issues" with AutoNation.

In a letter dated January 12, 1998, Appellee advised AutoNation that unless a PCA was signed by January 16, 1998, Appellee would reject all further proposed transfers, including the transfer of the two Jacksonville dealerships. The same letter stated that recent developments had forced Appellee to question its trust of AutoNation. Among other things, Appellee accused AutoNation of not adhering to dealership policies, contrary to AutoNation's prior representations.

No PCA was signed by January 16, 1998. On January 20, 1998, Appellee notified Appellants that it was rejecting the proposed transfer of the two Jacksonville dealerships to AutoNation. On the same day, in order to block the transfer, Appellee initiated an administrative proceeding by filing a verified complaint with the Florida Department of Highway Safety and Motor Vehicles (DHSMV).

In the DHSMV proceeding, Appellee relied on two grounds under Florida law to justify its decision to reject the proposed transfer: (1) AutoNation's lack of good moral character, Fla. Stat. §§ 320.643(1), 320.643(2)(a), and (2) AutoNation's lack of business experience, Fla. Stat. §§ 320.643(1), 320.644. Appellants filed a motion to dismiss. Since the proposed transfer involved merely a sale of stock (and not a transfer of the franchise agreement or a change in executive management), the Florida administrative law judge (ALJ) ruled that Fla.

4

Stat. § 320.643(2)(a) provided the sole basis for Appellee to object to the transfer. The ALJ held that, under § 320.643(2)(a), the only permissible ground for challenging a transfer is the transferee's lack of good moral character. Therefore, the ALJ dismissed Appellee's complaint insofar as it alleged AutoNation lacked business experience.

With respect to AutoNation's alleged bad moral character per § 320.643(2)(a), the ALJ held that Appellee's verified complaint stated a prima facie case. The allegations in the verified complaint were detailed and specific. Some of the allegations touched upon AutoNation's conduct with respect to the dealerships it had already acquired. For instance, AutoNation allegedly did not comply with Appellee's dealer-ownership policies, in contravention of oral and written representations made by AutoNation throughout 1997. Additionally, AutoNation allegedly refused to give local management full and complete control over dealership operations, in violation of AutoNation's contractual obligations. Notably, one of Appellee's executives swore under oath and signed a statement that the allegations in the verified complaint were true.

The ALJ rendered his ruling on March 24, 1998. On April 9, 1998, however, Appellee withdrew its verified complaint.[5] The withdrawal of the verified complaint permitted Appellants and AutoNation to consummate their merger, which they did on April 22, 1998. Nevertheless, Appellants contend that they were damaged because the value of AutoNation's stock dropped during the delay in consummating the merger.

On September 2, 1998, Appellants filed the instant lawsuit seeking damages for losses related to Appellee's attempt to block the transfer of their dealerships to AutoNation. After discovery, the parties filed cross-motions for summary judgment. The district court denied Appellants' motion and granted Appellee's motion.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standard as the district court. *See, e.g., Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1088 (11th Cir. 1999). This case requires us to examine the Florida Dealer Protection Act (the Act), Fla. Stat. §§ 320.60-320.70 (1997). In rendering a

---

[5] On the same day, Appellee filed a federal lawsuit in California against AutoNation. In that lawsuit, summary judgement was entered against Appellee. *See Nissan Motor Corp. in USA v. Republic Indus., Inc.*, No. SACV 99-0109-DOC (C.D. Calif. Feb. 5, 1999) (unpublished). In May 1999, Appellee and AutoNation entered into a PCA.

decision based on state substantive law, "we are bound to decide the case the way it appears the state's highest court would." *E.g., Royal Ins. Co. of Am. v. Whitaker Contracting Corp.*, 242 F.3d 1035, 1040 (11th Cir. 2001) (internal quotation marks and citation omitted).

## III.  DISCUSSION

Appellants' suit is based on Fla. Stat. § 320.697, which provides a cause of action to "[a]ny person who has suffered pecuniary loss or who has been otherwise adversely affected because of a *violation* by a licensee of [the Act]" (emphasis added).  Appellants contend that Appellee, a licensee,[6] violated the Act, specifically Fla. Stat. § 320.643, when it filed the verified complaint and objected to the transfer of the dealerships' equity interest.

Section 320.643 provides a mechanism to regulate the transfer of dealer franchise agreements and equity interests.  A licensee, like Appellee, is entitled to written notice of any such transfer.  To object to the transfer, a licensee must file a verified complaint with the DHSMV no later than 60 days after receiving notice. The available grounds for objection differ depending on the type of transfer.  For a

_____

[6] A licensee is an automobile manufacturer, distributor, or importer.  *See* Fla. Stat. §§ 320.60(8), 320.61; *see also Mercedes-Benz of N. Am. v. Mike Smith Pontiac GMC, Inc.*, 561 So. 2d 620, 623 n.5 (Fla. 1st DCA 1990).  The parties do not dispute that Appellee qualifies as a "licensee."

transfer of a franchise agreement, a licensee, under § 320.643(1), may not unreasonably withhold its approval, and all objections to the transfer — other than objections to the transferee's moral character or business experience — are presumed to be unreasonable. In contrast, for a transfer of the equity interest, a licensee, under § 320.643(2)(a), may object solely on the ground that the transferee lacks good moral character.[7]

The parties agree that Appellants were transferring merely their equity interest, not the franchise agreement, to AutoNation. In light of the Florida Supreme Court's decision in *Hawkins v. Ford Motor Co.*, 748 So. 2d 993 (Fla. 1999), Appellee concedes that it could properly object to the transfer solely under § 320.643(2)(a) and on the basis of AutoNation's lack of good moral character. *See id.* at 1000-02. Likewise, Appellants concede the ALJ was correct insofar as he ruled that Appellee filed a legally sufficient verified complaint, under the Act, when it objected to AutoNation's lack of moral character.

---

[7] If the transfer of equity interest results in a change of executive management, then a licensee may also object pursuant to Fla. Stat. § 320.644. *See Hawkins v. Ford Motor Co.*, 748 So. 2d 993, 1001 (Fla. 1999). Under § 320.644, a licensee may prevent a change in the executive management if the new management lacks good moral character or business experience. The parties, however, have not raised the applicability of § 320.644 in this case.

Nonetheless, Appellants contend that the filing of the verified complaint was a "violation" of the Act, because Appellee would have lost on the merits had it not voluntarily dismissed the complaint.[8] In other words, according to Appellants, any licensee who exercises its rights under § 320.643 by filing a legally sufficient verified complaint, but who ultimately would lose on the merits, is in violation of the Act and subject to damages and attorney's fees under § 320.697. On the other hand, Appellee contends that, since its verified complaint was legally sufficient, it did not commit a "violation" of the Act.

In arguing their positions, both parties rely on *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of North America, Inc.*, 32 F.3d 528 (11th Cir. 1994), where we faced similar circumstances under the Act.[9] In that case, the automobile

---

[8] As an alternative argument, Appellants suggest that a licensee who "unreasonably" objects to a transfer has violated § 320.643. Stated differently, to avoid liability, a licensee need not prove that it would prevail in the DHSMV proceeding; rather, the licensee would have to show it acted "reasonably" in objecting to a proposed transfer. Appellants do not clearly define what objections should be deemed unreasonable. If this case were before the Florida Supreme Court, we are convinced the court would reject the vague, almost standardless test proposed by Appellants.

[9] The dissent in *Mike Smith* criticized the majority for failing to certify a question of Florida law to the Florida Supreme Court. *See Mike Smith*, 32 F.3d at 535 (Hill, J. dissenting). The Florida Supreme Court has spoken favorably (albeit in dictum) of other issues discussed in *Mike Smith*. *See Hawkins*, 748 So. 2d at 997 n.5. Furthermore, no Florida court has disagreed or cast doubt on our discussion in *Mike Smith*. Thus, *Mike Smith* — though a decision of this Court

dealership initially proposed transferring its equity interest to Mr. Cutler. *See id.* at

530. Later, the dealership notified the licensee that the equity interest would

instead be transferred to Mr. Taylor. *See id.* The licensee objected to the Taylor

transfer and filed a verified complaint under § 320.643. *See id.* The sole ground

cited in the licensee's complaint was that the Taylor transfer might cause the

licensee to incur multiple liability. *See id.* The ALJ dismissed the complaint, and

on appeal, the Florida First District Court of Appeal affirmed. *See id.* (citing

*Mercedes-Benz of N. Am. v. Mike Smith Pontiac GMC, Inc.* 561 So. 2d 620, 625

(Fla. 1st DCA 1990)). In affirming, the Florida appellate court held:

> [T]he only basis for [the licensee's] complaint was its fear that
> Cutler . . . would successfully force a transfer under the original
> transfer agreement. Since this is not a proper basis for a transfer
> challenge [under § 320.643], the [DHSMV] correctly dismissed the
> complaint.

*Mercedes-Benz*, 561 So. 2d at 624 (footnote omitted).

Subsequently, the dealership and Mr. Taylor sued the licensee in federal

court under § 320.697. The dealership and Mr. Taylor argued that, in initiating the

administrative proceeding, the licensee had "violated" § 320.643. We agreed and

held "where a [licensee] opposes a transfer on grounds *not permitted* under

_____

and not the Florida Supreme Court — provides an appropriate analytical
framework for us to comply with the mandate that we must construe Florida law as
the Florida Supreme Court would.

10

§ 320.643, that [licensee] must be deemed . . . to have violated this statute." *Mike Smith*, 32 F.3d at 533 (emphasis in original). We also stated, "It is clear from the language of § 320.643 that a licensee has a right to object to a proposed transferee and, when *properly asserted*, the objection is free from fear of reprisal under § 320.697." *Id.* at 532 (emphasis added).

Appellants contend *Mike Smith* dictates a reversal of the district court's summary judgment order. Stated simply, in Appellants' view, Appellee's verified complaint was "not permitted" and not "properly asserted" because, although the complaint was legally sufficient, Appellee would have ultimately lost on the merits. As such, Appellants contend that Appellee committed a "violation" pursuant to § 320.697.

We disagree with Appellants' construction of *Mike Smith* and § 320.697. *Mike Smith* did not say that, for a licensee to be free from fear of reprisal under § 320.697, it had to file a *successful* or *meritorious* objection under § 320.643. In using the words "not permitted" and "[not] properly asserted," *Mike Smith* was referring to complaints that were legally insufficient under the Act — that is, complaints warranting dismissal because they lacked "a proper basis for a transfer challenge." *Mercedes-Benz*, 561 So. 2d at 624. Thus, a licensee does not violate the Act pursuant to § 320.697 when it files a legally sufficient verified complaint,

irrespective of whether the licensee would ultimately prevail in the challenge to the proposed transfer.[10]

## IV.  CONCLUSION

In this case, Appellee, a licensee, adhered to an administrative mechanism created under the Florida Dealer Protection Act for the purpose of regulating equity transfers in automobile dealerships.  In accordance with § 320.643(2)(a), Appellee filed, under oath, a verified complaint with detailed allegations about the transferee's lack of moral character.  The ALJ correctly ruled that the allegations, if proven true, were legally sufficient for Appellee to block the equity transfer.  As such, Appellee did not commit a "violation" pursuant to § 320.697,[11] and the district court properly granted summary judgment to Appellee.

AFFIRMED.

---

[10] In this case, Appellee's complaint was properly verified, as one of Appellee's officers swore under oath that the allegations were truthful.  We do not decide whether a violation would have occurred had Appellee not properly verified the complaint.

[11] Since we conclude Appellee did not violate § 320.697, we need not address the argument, advanced by Appellee, that holding it liable under § 320.697 would violate its "right . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.